```
              UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
                    WESTERN DIVISION
```

RONNIE SINGLETON, AS ADMINISTRATOR                       PLAINTIFF
AND ON BEHALF OF THE BENEFICIARIES
OF CHARLES SINGLETON, DECEASED

VERSUS                          CIVIL ACTION NO. 5:06cv15-DCB-JMR

MARINER HEALTH CARE, INC. d/b/a
TRACE HAVEN HEALTH & REHABILITATION
CENTER                                                   DEFENDANT

## ORDER

This matter comes before the Court on the defendant's Motion in Limine to Exclude Certain Opinions of Plaintiff's Expert Witness [**docket entry no. 102**]. Having carefully considered the Motion, memoranda in support and opposition thereof, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

This case is an action for nursing home negligence in which the plaintiff Ronnie Singleton seeks to recover survival and wrongful death type damages from the defendant Mariner Health Care, Inc. ("Mariner") based upon Mariner's care for the now-deceased Charles Singleton. The plaintiff has designated Darlene Bellows, RN, as an expert to offer various opinions relating to the care rendered to Charles Singleton during his brief stay at the nursing home owned by Mariner. On March 3, 2008, the defendant filed its Motion in Limine to Exclude Certain Opinions of Plaintiff's Expert Witness [docket entry no. 102], which is now before the Court.

In its Motion, the defendant contends that fifteen of Bellows's opinions should be excluded from evidence at trial either because she improperly purports to testify to the proximate cause of Charles Singleton's medical conditions or because the breaches of the standard of care to which she testifies are not causally linked to Charles Singleton's conditions by the competent testimony of a medical doctor.

In response, the plaintiff concedes that Bellows's opinions numbered 1, 4, 9, 10, 13, and 15 in the defendant's Motion should be excluded.  However, the plaintiff maintains that opinions 2, 5, 6, 11, and 12 are supported by the testimony of his expert Mark Stern, MD, and that opinions 3, 7, 8, 11, and 14 are within the realm of topics to which nursing experts like Bellows may testify.

### A. Opinions 2, 5, 6, 11, & 12

The plaintiff claims that Bellows's opinions 2, 5, 6, 11, and 12 are supported by Dr. Stern's testimony as to proximate causation and are admissible at trial.

In his written medical evaluation, Dr. Stern opines that the immediate cause of Charles Singleton's death was sepsis, a condition which developed from a urinary tract infection ("UTI"). (Stern Med. Eval. 3.)  According to Dr. Stern, deviations in the standard of care by Mariner contributed to the development and progression of the UTI and the resulting sepsis.  (Stern Med. Eval. 2.)  More particularly, Dr. Stern declares that Charles Singleton's

elevated temperature, lethargy, and confusion which were first observed by Mariner on or about July 18, 2003, should have alerted Mariner to the possibility of the onset of a UTI.  Moreover, Mariner's failure to notify Charles Singleton's physician of these symptoms until July 22, 2003, permitted Charles Singleton's infection to progress and his dehydration to become worse.  (Stern Med. Eval. 2.)   Dr. Stern further opines that had Charles Singleton's infection been discovered earlier and treatment begun, it is probable that he would have recovered.  (Stern Med. Eval. 2.)

Opinion 2

In Opinion 2, Bellows declares that Mariner's staff failed to notify Charles Singleton's physician of "certain events," including his elevated pulse, his hoarding of food, and blood in his urine. The defendant is correct that Dr. Stern does not refer to these events in his medical evaluation.  At trial, in order for Bellows to testify to such deviations from the standard of care and for such testimony to have relevance, the plaintiff must be able to present competent testimony causally connecting these alleged breaches to an injury incurred by Charles Singleton.  For now, the defendant's Motion as to Opinion 2 is denied without prejudice.

Opinion 5

Bellows also states that the Mariner staff negligently continued to use a Foley catheter without an order from a medical doctor or medical justification.  Dr. Stern states that inasmuch as

3

Charles Singleton arrived at the nursing home with a catheter, his risk of acquiring a UTI was significantly increased. However, Dr. Stern does not opine that the continued use of the Foley catheter proximately caused any injury to Charles Singleton. At trial, in order for Bellows to testify to this deviation from the standard of care and for such testimony to have relevance, the plaintiff must be able to present competent testimony causally linking this alleged breach to an injury incurred by Charles Singleton. The defendant's Motion as to Opinion 5 is denied without prejudice.

Opinion 6

In Opinion 6, Bellows opines that the Mariner staff negligently failed to monitor Charles Singleton's catheter with sufficient frequency. Dr. Stern's medical evaluation does mention that Charles Singleton came to the nursing home with a catheter and that he was at heightened risk of developing a UTI as a consequence; however, Dr. Stern does not suggest that the failure of the Mariner staff to frequently monitor Charles Singleton's catheter proximately contributed to his injuries. Therefore, in order for Bellows to testify to this deviation from the standard of care and for such testimony to have relevance at trial, the plaintiff must be able to present competent testimony causally connecting this alleged breach to an injury incurred by Charles Singleton. For the time being, the defendant's Motion as to Opinion 6 is denied without prejudice.

Opinion 11

In her eleventh opinion, Bellows avers that Mariner's staff failed to update Charles Singleton's care plan after he developed a new pressure ulcer, showed signs of lethargy, and began hoarding food. Dr. Stern did cite lethargy as one of the symptoms which should have alerted Mariner to the fact that Charles Singleton may have acquired a UTI and opined that the failure to notify a physician of this symptom (among others) proximately caused injury to Charles Singleton. However, Dr. Stern did not indicate that the alleged failure to update Charles Singleton's care plan after he showed signs of lethargy, began hoarding food, and developed a pressure ulcer was a proximate cause of an injury. At trial, in order for Bellows to testify to this deviation from the standard of care and for such testimony to have relevance, the plaintiff must be able to present competent testimony causally linking this alleged breach to an injury incurred by Charles Singleton. For now, the defendant's Motion as to Opinion 11 is denied without prejudice.

Opinion 12

In Opinion 12, Bellows declares that Mariner was negligent as to Charles Singleton's hydration and nutrition. Nowhere in his medical evaluation does Dr. Stern speak to Charles Singleton's nutrition, although he does state that Charles Singleton was dehydrated when he arrived at the hospital emergency room.

However, Dr. Stern does not indicate that the dehydration proximately contributed to Charles Singleton's injuries. Yet again, in order for Bellows to testify at trial to such deviations from the standard of care and for such testimony to have relevance, the plaintiff must be able to present some competent testimony causally connecting these alleged breaches to an injury incurred by Charles Singleton. The defendant's Motion as to Opinion 12 is denied without prejudice.

### B. Opinions 3, 7, 8, 11, & 14

The plaintiff claims that Bellows's opinions 3, 7, 8, 11, and 14 are proper topics for nursing expert testimony and are thus admissible at trial.

### Opinion 3

In Opinion 3, Bellows states that Mariner negligently failed to inform Charles Singleton's family that he had a bed sore. At trial, this testimony will be excluded if the plaintiff is unable to show a causal connection between this alleged breach of the standard of care and an injury experienced by Charles Singleton. At this time, the defendant's Motion as to Opinion 3 is denied without prejudice.

### Opinion 7

Bellows also opines that an unidentified breach of the standard of care caused Charles Singleton to develop a decubitis ulcer. Inasmuch as the plaintiff is unable to specify the

particular breach of the standard of care and lacks the education and experience required under Mississippi law to diagnose and testify to the causation of a medical condition like a decubitis ulcer, Richardson v. Methodist Hosp. of Hattiesburg, Inc., 807 So. 2d 1244, 1248 (Miss. 2002), this opinion will be excluded at trial.

Opinion 8

In Opinion 8, Bellows declares that the Mariner staff's failure to provide quality care and services caused Charles Singleton to experience oral hygiene issues and dried blood. This proferred testimony as to the proximate causation of oral hygiene conditions and dried blood shall be excluded because Bellows lacks the experience and education needed to render such an opinion. However, the portion of the statement which identifies deviations in the applicable standard of care (i.e. that the staff failed to provide quality care and services) may be admissible at trial, provided that the plaintiff is able to present competent evidence of the proximate causation of an injury to Charles Singleton.

Opinion 11

In Opinion 11, Bellows avers that Mariner's staff failed to update Charles Singleton's care plan after he developed a new pressure ulcer, showed signs of lethargy, and began hoarding food. Again, in order for Bellows to testify to this deviation from the standard of care and for such testimony to have relevance, the plaintiff must be able to present competent testimony causally

linking this alleged breach to an injury incurred by Charles Singleton. For now, the defendant's Motion as to Opinion 11 is denied without prejudice.

Opinion 14

In her fourteenth opinion, Bellows opines that the Mariner staff did not document the treatment which was given to Charles Singleton's pressure ulcer once he was admitted to the nursing home. Yet again, this testimony about a deviation in the standard of care may be admissible at trial if the plaintiff can demonstrate by appropriate evidence that the breach caused an injury to Charles Singleton. At the present time, the defendant's Motion as to Opinion 14 is denied without prejudice.

*C. Opinions 1, 4, 9, 10, 13, & 15*

Inasmuch as the plaintiff has conceded that Opinions 1, 4, 9, 10, 13, and 15 should be excluded at trial, the defendant's Motion as to these opinions is well-taken.

Based upon the foregoing,

**IT IS HEREBY ORDERED** that the defendant's Motion in Limine to Exclude Certain Opinions of Plaintiff's Expert Witness [**docket entry no. 102**] is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED**, this the   15th   day of May 2008.

　　　　　　　　　　　　　　　　　　  s/ David Bramlette   
　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**